UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LEHMAN BROTHERS HOLDINGS INC,

        Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE
COMPANY, LLC,

        Defendant.

## COMPLAINT

Plaintiff, Lehman Brothers Holdings Inc. ("LBHI"),[1] by and through its undersigned attorneys, and for causes of action against Defendant Universal American Mortgage Company, LLC ("Universal"), alleges as follows:

---

[1] Plaintiff Lehman Brothers Holdings Inc. ("LBHI") commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 15, 2008, in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"). On December 6, 2011, the Bankruptcy Court entered an order confirming LBHI's Modified Third Amended Chapter 11 Plan. LBHI's chapter 11 plan became effective on March 6, 2012, and LBHI is authorized to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

In August 2009, the Bankruptcy Court authorized LBHI to pursue claims with respect to the origination and purchase of residential mortgage loans. LBHI is pursuing that exact type of claim here and prosecuting this case to preserve the value of its assets for the benefit of its creditors.

## I. NATURE OF ACTION

1. At all times relevant hereto, Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman") purchased mortgage loans from Universal pursuant to a series of written contracts. LBB subsequently assigned its rights under those contracts to LBHI. With respect to certain of these mortgage loans, Universal breached provisions of the contracts that required it to repurchase from, or indemnify Lehman for mortgage loans which failed to comply with the parties' contracts. By this action, LBHI seeks to recover money damages for injuries that have been sustained as a result of Universal's failure or refusal to honor its obligation to repurchase loans and/or indemnify Lehman for its incurred losses.

2. The claim presented in this Complaint was originally Count III of LBHI's 8-count complaint in Case No. 11-20859-CIV-KING, filed in the Southern District of Florida. Pursuant to a ruling by the District Judge at the pretrial conference on January 4, 2013, and a subsequent Order entered on January 9, 2013, this claim was dismissed <u>without prejudice</u> to be re-filed as a separate cause of action, because the District Judge was of the opinion that each loan must be filed separately, rather than joined within one action.

## II. PARTIES

3. Plaintiff LBHI is a Delaware corporation with its principal place of business in New York, New York.

4. Defendant Universal is a Florida limited liability company with its principal place of business at 700 N.W. 107th Avenue, Suite 400, Miami, Florida.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff LBHI and Defendant Universal, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Colorado because Universal has been registered to do business in Colorado since 2002 and has maintained an agent in the state for the last ten years.

7. Universal has purposefully availed itself of the benefit of doing business—both with and without Lehman—in Colorado. On information and belief, Universal's business in Colorado includes, but is not limited to, mortgage lending.

8. In 2004, Universal entered into a business relationship with the Lehman entities pursuant to which Universal would sell residential mortgage loans to Lehman. That relationship was overseen by Aurora Loan Services, LLC ("Aurora"), a Lehman subsidiary then based in Littleton, Colorado.

9. Universal has had continuous and systematic communication with Lehman entities in Colorado, including with respect to the loans and related transactions at issue in this case. This includes: (1) recertification of their ability to originate loans; (2) securing delegated underwriting authority, which affected Universal's ability to approve mortgage loans to sell to Lehman with less oversight from Lehman; and (3) responding to repurchase demands issued by Lehman or its agent from Colorado.

10. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District and because the division of

LBHI that oversees its residential mortgage loss recovery program is based in Greenwood Village, Colorado, and thus its witnesses and documents are located here.

## IV. FACTUAL ALLEGATIONS

11. At all relevant times, Lehman engaged in the purchase and sale of mortgage loans.

12. Universal engages in mortgage lending, as well as the sale of mortgage loans on the secondary market to investors such as Lehman.

13. Universal entered into a written Loan Purchase Agreement (Servicing Released Transactions) dated September 20, 2005 with LBB and thereafter amended the Agreement by Addendum dated October 1, 2006 (together the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

14. The Agreement specifically incorporates the terms and conditions of the Seller's Guide of Lehman's agent, Aurora Loan Services LLC, which sets forth additional duties and obligations of Universal.

15. The Seller's Guide in its entirety is valid and binding upon Universal. Attached hereto as **Exhibit 2** are the specific Sections of the Seller's Guide most directly pertinent to the claims in this Complaint.

16. The Agreement and the Seller's Guide set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties and individual mortgage loans purchased or sold, and remedies for breach.

17. Universal sold mortgage loans to LBB under the Agreement and Seller's Guide, including Loan ****8749 (Reynolds).

18. LBB purchased Loan ****8749 from Universal.

19. Subsequent to the sale of Loan ****8749 by Universal to LBB, LBB sold Loan ****8749 to LBHI.

20. Subsequent or simultaneously with the sale by LBB to LBHI, LBB assigned to LBHI all of its rights and remedies under the Agreement and Seller's Guide pertaining to Loan ****8749.

### **Misrepresentations/Underwriting Defects**

21. With respect to each of the loans sold to Lehman under the Agreement and Seller's Guide, Universal made a number of representations, warranties and covenants concerning the mortgage loans including, but not limited to the following:

    (a) the validity of all mortgage loan documentation;

    (b) the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

    (c) occupancy by the borrowers of the properties securing the mortgage loans;

    (d) the ownership, nature, condition, and value of the real properties securing the mortgage loans; and

    (e) the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

22. Universal also represented and/or warranted that no errors, omissions, misrepresentations, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

23. Universal represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreement and Seller's Guide.

24. Lehman discovered material problems with Loan ****8749 (Reynolds) and that Universal had breached representations, warranties, and/or covenants under the Agreement and Seller's Guide, including, without limitation, those set forth above.

25. As to Loan ****8749 (Reynolds), the borrower and/or the loan documents, including the borrower's loan application, represented that borrower was employed as an "LVN / Nurse / Health Office" at Queen Creek Medical for a period of 3 years and 1 month. A re-verification of employment was conducted after the loan was purchased by LBB, and the employer advised that the borrower was employed on a part-time basis as a "back office medical assistant."

26. LBHI, through its agent, provided Universal with a letter informing Universal of Universal's material breaches of the representations, warranties, and covenants with respect to Loan ****8749.

27. Subsequent to the initial filing of a legal action against Universal and in the course of discovery (*see* ¶ 2 above), LBHI discovered that Loan ****8749 was also in violation of the Seller's Guide because the loan obligation resulted in "payment shock" (Loan payment is more than double borrower's previous housing payment) as described in Section 502 of the Seller's Guide and required Universal to utilize a full-documentation loan product for the borrower.

28. LBHI, through its agent, transmitted a letter on August 23, 2012, informing Universal of the existence of payment shock and the violation of Section 502.

29. Also subsequent to the initial filing of a legal action against Universal and in the course of discovery, LBHI discovered that Loan ****8749 was also in violation of the Seller's Guide and program profile (also referred to as product guidelines) because:

    (a) Universal failed to complete a Verification of Employment ("VOE") within five (5) days of closing the loan as required by the loan program profile;

    (b) Universal had first attempted to process the borrower for a Countrywide loan product, but then switched to an Aurora product; and

    (c) Universal had received two months of the borrower's bank statements but then ignored that information and failed to take the borrower's income into consideration.

30. LBHI notified Universal of the additional breaches discussed in paragraph 29 through its summary judgment documents filed in the prior legal action (*see* ¶ 2 above).

31. The misrepresentation on the loan documents, including the loan application, as to position and duration of employment was a material breach of Universal's representation, warranty and covenant in Section 703(1) of the Seller's Guide that:

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgager), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

///

///

///

32. The misrepresentation on the loan documents, including the loan application, also constituted a material breach of Universal's representation, warranty and covenant in Section 703(12) of the Seller's Guide that:

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

33. Universal's failure to comply (i) with the loan program profile by failing to conduct a VOE within five days of closing, (ii) with Section 502 of the Seller's Guide by failing to require full-documentation due to existence of payment shock, and (iii) failure to comply with Section 502 of the Seller's Guide by failing to consider the borrower's income which was disclosed on bank statements submitted to Universal, were also material breaches of Universal's representation, warranty and covenant in Section 703(8) of the Seller's Guide that:

> Seller, . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan; . . .

34. Universal's failure to comply (i) with the loan program profile by failing to conduct a VOE within five days of closing, (ii) with Section 502 of the Seller's Guide by failing to require full-documentation due to existence of payment shock, and (iii) failure to comply with Section 502 of the Seller's Guide by failing to consider the borrower's income which was disclosed on bank statements submitted to Universal, were also material breaches of Universal's representation, warranty and covenant in Section 703(21) of the Seller's Guide that:

> The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan. . . .

35. Universal's failure to comply (i) with the loan program profile by failing to conduct a VOE within five days of closing, (ii) with Section 502 of the Seller's Guide by failing to require full-documentation due to existence of payment shock, and (iii) failure to comply with Section 502 of the Seller's Guide by failing to consider the borrower's income which was disclosed on bank statements submitted to Universal was a material breach of Section 717 of the Seller's Guide that:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

36. Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

37. The breaches discussed above materially and adversely affected the value of the Loan and the interests of LBHI, causing LBHI to lose over one-hundred thousand dollars ($100,000).

38. As assigned, the Agreement and Seller's Guide provide that in the event of a breach of the representations, warranties, and/or covenants, LBHI or its agent may demand that

Universal repurchase the loan and Universal shall repurchase the loan at a certain repurchase price, and/or that Universal shall indemnify LBHI or its agent for LBHI's losses on such a loan.

39. Universal has refused or otherwise failed to repurchase Loan ****8749 and has otherwise failed to comply with its obligations under the Agreement and Seller's Guide, including its obligation to indemnify LBHI.

40. Pursuant to Section 8 of the Agreement, the laws of the State of New York govern this contract action.

41. All conditions precedent to bringing this action have been met, occurred or have been waived.

## V. CLAIMS FOR RELIEF

### First Claim for Relief
(Breach of Contract)

42. LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

43. The Agreement and the Seller's Guide is a valid and enforceable contract that is binding upon Universal.

44. Lehman, Lehman's agents and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement and Seller's Guide.

45. Universal breached the Agreement and Seller's Guide by breaching the representations, warranties, and/or covenants including but not limited to those described above in Section IV.

46. Universal further breached the Agreement and Seller's Guide by refusing or otherwise failing to repurchase Loan ****8749 and/or failing to indemnify Lehman for its losses as to Loan ****8749.

47. Universal's breaches of the Agreement and Seller's Guide as to Loan ****8749 resulted in actual and consequential damages to LBHI in excess of $100,000.00, plus prejudgment interest pursuant to New York law, attorneys fees, litigation costs and all other fees and costs provided by the Agreement, the exact amount of which to be proven by the evidence.

## VI. PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant Universal as follows:

(a) For all damages arising from or relating to Universal's breaches of contract, in an amount to be proven at trial;

(b) For an Order of this Court declaring that Universal is required to compensate Lehman immediately for all actual and consequential damages resulting from Universal's breaches of the Representations, Warranty, and Covenant provisions of the Agreement and Seller's Guide;

(c) For recoverable interest;

(d) For the costs and expenses incurred by LBHI in enforcing Universal's obligations under the Agreement and Seller's Guide, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

(e) For such other relief as the Court deems just and proper.

Dated: January 16, 2013

Respectfully submitted,

By: _____ */s/ Christopher P. Carrington*
      Justin D. Balser
      Christopher P. Carrington
Email: justin.balser@akerman.com
Email: chris.carrington@akerman.com

**AKERMAN SENTERFITT LLP**
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
*Attorneys for Plaintiff, Lehman Brothers Holdings Inc.*