**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00091-REB-KMT

LEHMAN BROTHERS HOLDINGS, INC.,

      Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,

      Defendant.

---

## ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      The matters before me are (1) **Universal's Motion for Summary Judgment** [#57],[1] filed November 21, 2013; and (2) **Plaintiff's Motion for Partial Summary Judgment** [#55], filed November 4, 2013.[2]  I grant defendant's motion, deny plaintiff's cross-motion, and dismiss plaintiff's claims as barred by limitations.[3]

## I.  JURISDICTION

      I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

---

      [1]  "[#57]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

      [2]  The issues raised by and inherent to the cross-motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the cross-motions stand submitted on the briefs.  **Cf. Fed. R. Civ. P.** 56(c) and (d).  **Geear v. Boulder Community Hospital,** 844 F.2d 764, 766 (10th Cir.) (hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), **cert. denied**, 109 S.Ct. 312 (1988).

      [3]  My resolution of the summary judgment motions moots consideration of **Plaintiff's Motion To Exclude Defendant's Expert and Strike Defendant's Expert Report** [#56], filed November 7, 2013.

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).

## III.  ANALYSIS

On June 19, 2006, plaintiff's predecessor-in-interest, Lehman Brothers Bank, FSB ("LBB"), purchased a residential mortgage loan from defendant.  LBB resold the loan to Freddie Mac on July 28, 2006.  Within a year, the property securing the loan was foreclosed, and Freddie Mac demanded that LBB make it whole for its resulting losses. Plaintiff, as LBB's assignee, paid Freddie Mac and then filed suit against defendant in the United States District Court for the District of Florida to recoup its own losses as to that loan and seven others.  Concluding that those claims were consolidated improperly, the Florida court severed and dismissed without prejudice the claims relevant to seven of the eight loans – including the claims now brought in this lawsuit.  Plaintiff now alleges a single claim for breach of contract against defendant.

The relevant contract documents, which include the parties' Loan Purchase Agreement (the "Agreement") and the Seller's Guide incorporated by reference therein, contains the following choice of law provision:

> This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.

(**Am. Compl.**, Exh. 1 § 8 at 2.)  Absent special circumstances, courts will honor such contractual choice-of-law provisions.  *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427-28 (10th Cir. 2006); *Tax Services of America, Inc. v. Mitchell*, 2008 WL 2834271 at *2 (D. Colo. July 21, 2008).  The parties here do not contend that any special circumstances warrant disregarding their contractual choice of law, but instead disagree as to whether

one particular provision of New York law – its so-called "borrowing statute" – is

applicable. The New York borrowing statute provides that

> [a]n action based upon a cause of action accruing without
> the state cannot be commenced after the expiration of the
> time limited by the laws of either the state or the place
> without the state where the cause of action accrued, except
> that where the cause of action accrued in favor of a resident
> of the state the time limited by the laws of the state shall
> apply.

N.Y. Civ. Prac. Law and Rules ("CPLR") § 202.  Defendant insists that the borrowing

statute applies to plaintiff's breach of contract claim and that, as a consequence,

plaintiff's claim is barred by limitations. I agree.[4]

Stated plainly, the borrowing statute requires that, when a nonresident sues on a

cause of action accruing outside New York, the cause of action must be timely under

both New York's applicable statute of limitation and that of the jurisdiction where the

cause of action accrued.  *Global Financial Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484

(N.Y. 1999).  The cause of action is barred if either of these two periods of limitation has

expired.[5]  *See Arneil v. Ramsey*, 550 F.2d 774, 779 (2nd Cir. 1977), *superseded by*

---

[4] Because I agree, I do not consider the other issues raised by and inherent to the motions.

[5] "The primary purpose of CPLR 202 and its predecessors is to prevent forum shopping by a nonresident seeking to take advantage of a more favorable Statute of Limitations in New York." *Antone v. General Motors Corp., Buick Motor Division*, 473 N.E.2d 742, 745 (N.Y. 1984).  The statute protects New York residents from suits brought by nonresidents which could have been filed in another appropriate forum but for the fact that the claim would be barred by limitation there.  *See Gorlin v. Bond Richman & Co.*, 706 F.Supp. 236, 241 n.9 (S.D.N.Y. 1989); *Global Financial Corp.*, 715 N.E.2d at 484.  The statute also "add[s] clarity to the law and [] provide[s] the certainty of uniform application to litigants." *Bennett v. Hannelore Enterprises, Ltd.*, 296 F.Supp.2d 406, 413 (E.D.N.Y. 2003) (quoting *Insurance Co. of North America v. ABB Power Generation, Inc.*, 690 N.E.2d 1249, 1252-53 (N.Y.1997)) (internal quotation marks omitted).  Because application of the borrowing statute eschews resort to traditional conflict-of-laws analysis, it may result in the application of the laws of a jurisdiction which does bear any significant relationship to the case at all.  *See In re Gaston & Snow*, 243 F.3d 599, 608 (2nd Cir.), *cert. denied*, 122 S.Ct. 618 (2001).  *See also Dutton v. Glass*, 2005 WL 146503 at * 3 (S.D.N.Y. Jan. 20, 2005) ("Application of C.P.L.R. § 202 is required even where jurisdiction over the defendants cannot be obtained

*statute on other grounds as recognized in Brawer v. Options Clearing Corp.*, 633
F.Supp. 1254, 1257 (S.D.N.Y.), *aff'd*, 807 F.2d 297 (2nd Cir. 1986), *cert. denied*, 108
S.Ct. 76 (1987).  Defendant insists that the parties' contract requires the court to apply
the borrowing statute, as a consequence of which Delaware law applies, barring
plaintiff's claim.  Plaintiff resists application of the borrowing statute on two primary
bases: (1) that the parties' contract prevents the court from considering New York's
conflict of laws principles, such as the borrowing statute; and (2) that the statute is
inapplicable in any event because LBB was a New York resident.  I examine these
contentions in turn.

Plaintiff maintains that section 202 is inapplicable because the contract provides
that "the Loan Purchase Agreement shall be construed in accordance with the
substantive law of the State of New York . . . without regard for the principles of conflict
of laws."  (**Am. Compl.**, Exh. 1 § 713.1).[6]  However, New York courts have confirmed
clearly that the borrowing statute is a statute of limitation, not a choice-of-law provision.[7]

---

in the foreign jurisdiction because of their insufficient contacts with that state."); *Verizon Directories
Corp. v. Continuum Health Partners, Inc.*, 902 N.Y.S.2d 343, 343 (N.Y. 2010) ("We reject plaintiff's
contention that, for purposes of the [borrowing] statute, it is a 'resident' of New York, or that its cause of
action accrued in this state, by virtue of its authorization to do business and asserted extensive presence
here.").

[6]  Even if the parties had not so provided explicitly, a similar principle nevertheless would be
operative.  *See Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) ("[I]n the absence
of a contrary indication, a contractual choice-of-law clause refers to the substantive law of the chosen
jurisdiction and does not include that jurisdiction's conflicts-of-laws principles.  Applying the conflicts
principles would reintroduce 'the uncertainties of choice of law' and 'defeat the basic objectives, namely
those of certainty and predictability, which the choice-of-law provision was designed to achieve.'"), *cert.
dismissed*, 118 S.Ct. 906 (1998) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(3) & cmt.
h (1988)).

[7]  Plaintiff argues that section 202 is a choice-of-law principle, not a conflict-of-law principle, but
fails to articulate how this alleged distinction makes a difference.  Conflict-of-law issues are a particular
type of choice-of-law question, not a distinct and separate legal category.

The statute is located within the article of New York's Civil Practice Law and Rules addressing "Limitations of Time."  Moreover, and despite the loose language employed by some courts,[8] section 202 regularly is characterized by New York courts as an *exception* to normal choice-of-law rules.  ***See In re Gaston & Snow***, 243 F.3d at 608; ***Aboushanab v. Janay***, 2007 WL 2789511 at *3 (S.D.N.Y. Sept. 26, 2007); ***Ledwith v. Sears Roebuck and Co., Inc.***, 660 N.Y.S.2d 402, 406 (App. Div. 1st Dept. 1997).[9] Indeed, New York's highest court has made clear that "there is a significant difference between a choice-of-law question, which is a matter of common law, and this Statute of Limitations issue, which is governed by particular terms of the CPLR."  ***Global Financial Corp.***, 715 N.E.2d at 484.  Thus, "modern choice-of-law decisions are simply inapplicable to the question of statutory construction presented by CPLR 202  . . . [and accordingly] CPLR 202 is to be applied as written, without recourse to a conflict of laws analysis."  ***Ledwith***, 660 N.Y.S.2d at 406 (citation and internal quotation marks omitted).[10]

Having thus determined that application of the borrowing statute is not foreclosed by the contract itself, I must determine next whether the borrowing statute applies to the

---

[8]  The language on which plaintiff places so much reliance in this regard is the rankest of dicta. ***See In re Agent Orange Product Liability Litigation***, 597 F.Supp. 740, 810 (E.D.N.Y. 1984), ***aff'd***, 818 F.2d 145 (2nd Cir. 1987), ***cert. denied***, 108 S.Ct. 695 (1988).

[9]  For this same reason, the doctrine of *renvoi* has no bearing on the application of New York's borrowing statute.  ***See Baena v. Woori Bank***, 2006 WL 2935752 at *7 (S.D.N.Y. Oct. 11, 2006); ***Ledwith***, 660 N.Y.S.2d at  406.

[10]  Moreover, the contracts reference to application of New York law "without regard for the principles of conflict of laws" more properly is read to refer not to New York's conflict-of-law principles, but rather to those of the forum in which suit is brought.  ***See Klaxon Co. v. Stentor Electric  Manufacturing Co.***, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); ***Trierweiler v. Croxton and Trench Holding Corp.***, 90 F.3d 1523, 1532 (10th Cir. 1996).  This interpretation more readily would ensure that the determining court would rely on the law of New York, which clearly was the parties' intent.

facts of this case.  This inquiry requires me to address the interrelated questions of residency and accrual.  In interpreting the borrowing statute, New York courts have held that "a cause of action accrues at the time and in the place of the injury."  ***Global Financial Corp.***, 715 N.E.2d at 485.  "When an alleged injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss."  ***Gorlin v. Bond Richman & Co.***, 706 F.Supp. 236, 240 (S.D.N.Y. 1989); ***Global Financial Corp.***, 715 N.E.2d at 485.  "In the case of a corporate plaintiff, that may be the state of incorporation or its principal place of business."  ***Oxbow Calcining USA Inc. v. American Industrial Partners***, 948 N.Y.S.2d 24, 30 (App. Div. 1st Dept. 2012); ***see also Global Financial Corp.***, 715 N.E.2d at 485.

This inquiry would be relatively straightforward, but for the fact that LBB was not a corporation, but a federally chartered savings association.[11]  As such, LBB was not incorporated under the laws of any state.  The borrowing statute therefore applies only if LBB's principal place of business was outside of New York.  Relying on ***In re Countrywide Financial Corporation Mortgage-Backed Securities Litigation***, 834 F.Supp.2d 949 (C.D. Cal. 2012), plaintiff insists that LBB's principal place of business was New York because it had "a significant connection" to New York.  I find its arguments unpersuasive, for at least two reasons.

First, plaintiff has flipped the holding of ***In re Countrywide*** on its head.  The court there did not hold, as plaintiff appears to believe, that a "significant connection" to

---

[11]  Plaintiff does not contest that it is LBB's residence that is relevant for purposes of this action, nor argued that its own residency is applicable.  As LBB's assignee, plaintiff "is not entitled to stand in a better position than its assignor," and it therefore is LBB's residency that is controlling.  ***See Portfolio Recovery Associates, LLC v. King***, 14 N.Y.3d 410, 416, 927 N.E.2d 1059 (N.Y. 2010).

New York is sufficient to establish residency for purposes of the borrowing statute.
Rather, in response to the defendants' arguments that a corporation is a resident only of
its state of incorporation, the court confirmed the rather unremarkable proposition that a
corporation's principal place of business also constitutes a significant connection to the
state, and thus may be used for purposes of determining the corporation's residency
under the borrowing statute.  *Id.* at 958.  Plaintiff's reliance on the decision for any
broader principle is insupportable.

    More importantly, however, plaintiff's argument ignores the fact that a federally
chartered savings association such as LBB is wholly a creature of federal statutory law.
***See West Helena Savings and Loan Association v. Federal Home Loan Bank
Board***, 553 F.2d 1175, 1180 (8th Cir. 1977) (noting that federally chartered savings
associations were created by passage of the Home Owners' Loan Act of 1933, 12
U.S.C. § 1461 *et seq.*); ***Resolution Trust Corp. v. Hess***, 820 F.Supp. 1359, 1362 (D.
Utah 1993) (noting that federally chartered savings associations are "federally
chartered, federally regulated, federally insured, and federally organized"), ***overruled
on other grounds by Atherton v. FDIC***, 519 U.S. 213, 217-26, 117 S.Ct. 666, 136
L.Ed.2d 656 (1997), ***as recognized in FDIC v. Schuchmann***, 235 F.3d 1217, 1225 n.4
(10th Cir. 2000).  As such, LBB was regulated by the Federal Home Loan Bank Board
("FHLBB"), which "promulgate[s] regulations governing the powers and operations of
every Federal savings and loan association from its cradle to its corporate grave."  ***See
Fidelity Federal Savings and Loan Association v. de la Cuesta***, 458 U.S. 141, 144-
45, 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664 (1982) (citation and internal quotation marks

8

omitted).[12]  The power of the FHLBB is so plenary that its regulations have preemptive

effect over conflicting state laws.  *See id*., 102 S.Ct. at 3022-25.

The federal regulations to which LBB thus was subject as a federally chartered

savings association provide that "[a]ll operations of a Federal savings association. . . are

subject to direction from the home office."  *See* 12 C.F.R. § 545.91(a).  In addition, a

member association "may become a member only of the Bank of the district in which

the institution's principal place of business is located," 12 C.F.R. § 1263.18(a)(1), and

"the principal place of business of an institution is the State in which the institution

maintains its home office . . ." *id.* § 1263.18(b).  *See also id.* § 561.39 (equating the

terms "principal office" and "home office"). Given the institutional nature of LBB as a

federally chartered savings association organized and governed by comprehensive

federal regulation, this particular regulatory definition must prevail over any ordinary

meaning the term "principal place of business" might have in other contexts.  *See*

*Lehman Brothers Bank, FSB v. State Bank Commissioner*, 937 A.2d 95, 103 (Del.

Supr. 2007) ("The rule of construction which requires that an undefined statutory term

be given its ordinary meaning does not apply to terms of art."), *cert. denied*, 128 S.Ct.

2081 (2008).

Accordingly, I find and conclude that the principal place of business of a federally

---

[12] "The Board, an independent federal regulatory agency, was formed in 1932 and thereafter was vested with plenary authority to administer the Home Owners' Loan Act of 1933 (HOLA), 48 Stat. 128, as amended, 12 U.S.C. § 1461 *et seq.* (1976 ed. and Supp. IV).  Section 5(a) of the HOLA, 12 U.S.C. § 1464(a) (1976 ed., Supp. IV), empowers the Board, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations.'"  *Fidelity Federal*, 102 S.Ct. at 3018 (footnote and citation omitted).

chartered savings association is its home office.[13]  LBB designated its home office as

Delaware.[14]  (*See* **Def. Motion App.**, Exh. 1(C) § 2 at 1 [#57], filed November 21,

2013.)  The statute of limitations for breach of contract actions under Delaware law is

three years.  10 Del. Code § 8106.  The sale of the loan to LBB occurred in June

2006.[15]  Plaintiff did not file its claim until March 2011.  Thus, the claims are barred by

limitations.

## IV.  CONCLUSION

I find and conclude that New York's borrowing statute is applicable to plaintiff's

claim for breach of contract.  Under the statute, LBB's residency must be determined by

reference to principal place of business, which for purposes of a federal chartered

savings association, is equivalent to its home office.  Because LBB's home office was

designated in Delaware, the court must conclude that Delaware was the place where

---

[13] I note too that the rule for determination of the residency of a federally chartered savings association in a diversity case is the same.  12 U.S.C. § 1464(x) ("In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen of the State in which such savings association has its home office.").  *See also Hukic v. Aurora Loan Services*, 588 F.3d 420, 427-28 (7th Cir. 2009) (setting forth history leading to enactment this provision).

[14] In addition, during the time period relevant to the loan at issue in this lawsuit, it was a member of the Federal Home Loan Bank of Pittsburgh, whose district encompasses Delaware, but relevantly not New York.  *See Lehman Brothers Bank*, 937 A.2d at 104.

[15] In its response, plaintiff did not address the issue of when the statute of limitations on a breach of contract action begins to run under Delaware law, and I therefore deny its request to file a surreply on that issue.  (*See* **Plaintiff's Motion for Leave To File Surreply to Defendant's Reply in Support of Defendant's Motion for Summary Judgment** [#70], filed January 8, 2014.)  Moreover, the case addressed in the surreply interpreted New York, not Delaware, law.  Under Delaware law, a cause of action for breach of contract accrues at the time of the breach; it is not tolled until the plaintiff discovers its injury.  *See Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*, 860 A.2d 312, 319 (Del. Supr. 2004).  The same rule applies even to claims of misrepresentation and fraud.  *See Central Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, 2012 WL 3201139 at *17 (Del. Ch. Aug. 7, 2012).  (The Loan Agreement provided that all representations and warranties made by defendant under the Agreement are made as of the purchase date of the loan.)  Even if tolling were applicable, plaintiff knew or should have known of its cause of action by at least August 2007, when Freddie Mac first demanded indemnification.  That date, too, is more than three years prior to the filing of suit.

plaintiff's cause of action accrued for purposes of the borrowing statute.  Because

plaintiff's claim is barred by Delaware's three-year statute of limitations on breach of

contract claims, defendant's motion for summary judgment must be granted on that

basis .

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Universal's Motion for Summary Judgment** [#57], filed November 21,

2013, is **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

> a.  That the motion is **GRANTED** to the extent it contends that plaintiff's
>
> claims are barred by limitations; and
>
> b.  That in all other respects, the motion is **DENIED AS MOOT**;

2.  That **Plaintiff's Motion for Partial Summary Judgment** [#55], filed

November 4, 2013, is **DENIED**;

3.  That **Plaintiff's Motion To Exclude Defendant's Expert and Strike

Defendant's Expert Report** [#56], filed November 7, 2013, is **DENIED AS MOOT**;

4.  That **Plaintiff's Motion for Leave To File Surreply to Defendant's Reply in

Support of Defendant's Motion for Summary Judgment** [#70], filed January 8, 2014,

is **DENIED**;

5.  That plaintiff's claim against defendant for breach of contract is **DISMISSED

WITH PREJUDICE** as barred by limitations;

6.  That judgment with prejudice **SHALL ENTER** on behalf of defendant,

Universal American Mortgage Company, LLC, against plaintiff, Lehman Brothers

Holdings, Inc., on all claims for relief and causes of action asserted in this action;

     7.  That all pretrial deadlines, the Trial Preparation Conference set Friday,

February 7, 2014, at 3:00 p.m., and the trial set to commence February 24, 2014, are

**VACATED**; and

     8.  That defendant is **AWARDED** its costs, to be taxed by the clerk of the court

pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

     Dated January 27, 2014, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge